Bergan, J.
The film “ Blue Movie ”, subject of this prosecution under section 235.05 of the Penal Law, is simple pornography unrelieved by any merit. Acts of sexual intercourse are portrayed, actual or simulated, accompanied by a series of sexual manifestations and movements.
The elements which must be established to satisfy the constitutional protection afforded by the First Amendment to freedom of expression as laid down by Both v. United States (354 U. S. 476) are established in this prosecution. The statute itself meets the Both standards (Overstock Book Co. v. Barry, 436 F. 2d 1289 [2d Cir., 1970]).
Those elements justifying prosecution by the State and meeting Federal constitutional requirements are that the dominant theme of the production as a whole appeals to prurient interest in sex; is patently offensive as an affront to community standards; and is without redeeming social value (Bedrup v. New York, 386 U. S. 767 [1967]; Memoirs v. Massachusetts, 383 TJ. S. 413 [1966]; Jacobellis v. Ohio, 378 TJ. S. 184 [1964]).
There are, of course, a number of cases holding that in particular publications or films these tests were not met and prosecution would not lie. A recent example is Cain v. Kentucky (397 U. S. 319) where the Court of Appeals of Kentucky (437 S. W. 2d 769) was reversed. It is not fruitful, however, by detailed differentials addressed to values that are better or worse, or to explicit or less explicit sexuality, to find guidance in deciding obscenity cases. Decision cannot reasonably be grounded on adding and subtracting obscenity points, one case to another.
The needs of adjudication must, as a practical matter, be met by such mature and objective judgment as Judges are able to bring to it. A majority of this court, having viewed the film, is in agreement with the trial court and the Appellate Term that the film is obscene, and that prosecution is not interdicted by the First Amendment.
Appellant argues also that before the warrants issued for the seizure of the film and for his arrest, he was entitled to an *322 adversary hearing before the Judge who issued them on the question of the film’s obscenity.
The procedure followed here was that the Judge attended the public theatre at which the film was exhibited and, on seeing it, concluded there was probable cause to institute prosecution and issued the warrants.
This independent judicial action met fully the basic rule laid down in Marcus v. Search Warrant (367 U. S. 717) as later analyzed in the several opinions in A Quantity of Books v. Kansas (378 U. S. 205); that the seizure of evidence as obscene, and arrests on this ground, should not be left to the judgment of policemen, but should have judicial supervision.
It was noted, on this issue in Marcus, that the warrants for a very large number of magazines and books (11,000 copies) were issued “ on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials ” (pp. 731-732). That is certainly not this case. The warrants involved here were preceded by judicial scrutiny and were the .result of judicial determination.
The additional question is whether the scrutiny should have been followed by an adversary hearing. The Supreme Court has not held that; and its most recent comment on the problem, suggests it is not moving in that direction (Lee Art Theatre v. Virginia, 392 U. S. 636 [1968]).
There a Virginia conviction was reversed on authority of Marcus (supra). Not only was there no judicial scrutiny in advance, but the policeman’s affidavit, used as a basis for the warrant, was both subjective and general. There was an absence of “ any inquiry by the justice of the peace into the factual basis for the officer’s conclusions” (p. 637). Of course, that was not enough under Marcus.
But what is of relevancy for the present case is the observation by the Supreme Court that “ we need not decide in this case whether the justice of the peace should have viewed the motion picture before issuing the warrant ” (p. 637). This implies that had the Justice done so, as the Judge in the present case did, it would have been sufficient. There is no suggestion that an adversary hearing, an extreme departure from standard American practice on warrants, would also have been required.
*323 Thus the decisions of the Second Circuit in Astro Cinema Corp. v. Machell (422 F. 2d 293 [1970]) and Bethview Amusement Corp. v. Cohn (416 F. 2d 410 [1969], cert. den. 397 U. S. 920), requiring adversary hearings before warrants are issued, go beyond any requirement imposed on State courts by the Supreme Court.
There are intrinsic procedural difficulties in requiring such hearings. The usual reason for an adversary hearing before a Magistrate as to whether a warrant should or should not issue arises from a close issue as to whether there is a real basis in fact for probable cause to begin a prosecution.
But when a Magistrate sees a film, it is not much help to him, or indeed to the parties, in deciding probable cause to have counsel on one side tell him what he has just seen is obscene and on the other that it is not. He is deciding, on the warrant question, not guilt or innocence, but the prima facie sufficiency of ground to prosecute based on probable cause. The legal issue of obscenity on the merits of the charge can quickly be determined when the prosecution begins by appropriate motion.
There is a difference, too, in the impact of a wide-ranging warrant such as that in Marcus (supra) for the seizure of 11,000 publications which could amount to actual suppression of expression, and a single film which at the initial stage of the prosecution is taken merely as evidence until there has been a final adversary determination on the merits whether it violates the statute.
The order should be affirmed.