**MOD AMUSEMENT CO., Inc., Plaintiff,**

v.

**Patrick MURPHY, Commissioner of the Police Department of the City of New York, and Frank S. Hogan, District Attorney of New York County, Defendants.**

**CIRCUS CINEMA CORP., Plaintiff,**

v.

**Patrick MURPHY, Commissioner of the Police Department of the City of New York, and Frank S. Hogan, District Attorney of New York County, Defendants.**

**Nos. 72 Civ. 1(MP), 72 Civ. 24.**

United States District Court,
S. D. New York.

Jan. 7, 1972.

Jay Goldberg, New York City, for Mod Amusement Co.

J. Lee Rankin, Corporation Counsel, City of New York, New York City, for Patrick Murphy, Commissioner, by Michael Klein, New York City, of counsel.

Frank S. Hogan, Dist. Atty. of New York County, New York City, by Hugh A. Levine, Asst. Dist. Atty., of counsel.

Kassner & Detsky, New York City, for Circus Cinema Corp.

## DECISION AND OPINION

POLLACK, District Judge.

Plaintiffs, Mod Amusement Co., Inc. ("Mod") and Circus Cinema Corp. ("Circus"), by motions for preliminary injunction which were heard together for convenience and efficiency, seek the return of motion picture films which were taken from their theatres by members of the New York City Police Department, pursuant to search warrants issued by a Judge of the New York City Criminal Court who had viewed the motion pictures in their entirety before issuing the warrants. At the same time that the motion pictures were taken from plaintiffs' premises, arrests were made of the managers of the theatres for alleged violation of § 235.05 of the New York Penal Law (McKinney 1967) and prosecutions in the New York City Criminal Court were promptly commenced against the arrested individuals by the District Attorney for New York County.

Plaintiff "Mod" operates the Cine Lido Theatre at 200 West 48th Street in New York City and, on December 30, 1971, publicly exhibited a motion picture entitled "School Girl."

Plaintiff "Circus" operates the Circus Cinema Theatre at 1604 Broadway in New York City and, on December 30, 1971, publicly exhibited a motion picture entitled "Hot Parts."

On that day, Judge Joel Tyler of the New York City Criminal Court personally viewed the public exhibition of the

**1268**

motion pictures "School Girl" and "Hot Parts" at plaintiffs' theatres and concluded that probable cause existed for the seizure of the films and for the District Attorney to institute criminal prosecutions for alleged violation of the New York obscenity law.

Plaintiffs in these actions are asking this Court to order the return of motion picture films which are now or may become evidence in pending New York criminal proceedings.

■ Absent a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief," United States Courts should not intervene in pending state criminal proceedings. Younger v. Harris, 401 U.S. 37, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In the instant actions, plaintiffs have made no such showing.

Evidence of the good faith of the defendants in their enforcement of the New York obscenity law is indicated by their explicit reliance on and adherence to the procedure approved on December 1, 1971, by the New York Court of Appeals in People v. Heller, 29 N.Y. 2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971). That case authorized state officials to seize allegedly obscene motion pictures on the determination of probable cause made by a Judge after viewing the pictures without a prior adversary hearing. The Court said: "But when a magistrate sees a film it is not much help to him, indeed to the parties, in deciding probable cause to have counsel on one side tell him what he has just seen is obscene and on the other that it is not."

■ Under the most recent interpretations of the law by the Court of Appeals in this Circuit, a seizure without a

hearing accorded to the adversaries does not vindicate First Amendment rights, albeit that the seizure was preceded by a viewing of the film by a Judge of the Criminal Court of the City of New York. The absence of hearing the adversaries, according to the Second Circuit, renders the authorization of the seizure by the viewing Judge constitutionally defective. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); Astro Cinema Corp. v. Mackell, 422 F.2d 293 (2d Cir. 1970); See also Bongiovanni v. Hogan, 309 F.Supp. 1364 (S.D.N.Y. 1970) (Tyler, J.).

The Supreme Court denied certiorari in *Bethview* on February 24, 1970 which was before the decision of Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L. Ed.2d 701 (February 23, 1971). Nonetheless, this Court is constrained to follow *Bethview* and leave it to the appellate courts to decide whether by reason of the procedure sanctioned in *Heller*, judicial scrutiny which results in a judicial determination of probable cause, without hearing the adversaries, satisfies the constitutional protection afforded by the First Amendment to freedom of expression as laid down by Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

It would be presumptuous for a District Judge to ignore or rewrite the principle of law laid down by the Court of Appeals for a case seemingly on all fours with this one. Distinctions between this and the cases decided by the Court of Appeals, if significant, will have to be announced by that Court. Judicial discipline requires no less of this Court.

Defendants are directed to return the film seized to the motion picture operator, without prejudice to the right of the defendants to subpoena the same for use as evidence in the pending criminal proceeding.

The foregoing constitutes the findings of fact and conclusions of law in each of

the above cases, required by Rule 52(a) and Rule 65 of the Federal Rules of Civil Procedure.

Effectiveness of this order is stayed until 5 P.M. January 10, 1972.

So ordered.