G. I. DISTRIBUTORS, INC., et al.,
Plaintiffs,

v.

Patrick MURPHY, Individually and in his capacity as Police Commissioner of the City of New York, and Frank S. Hogan, Individually and in his capacity as District Attorney of New York County, Defendants.

No. 72 Civ. 95.

United States District Court,
S. D. New York.

Jan. 19, 1972.

Herald Price Fahringer, Jr., Buffalo, N. Y., for plaintiffs.

J. Lee Rankin, Corporation Counsel, New York City, for defendant Murphy; Michael M. Klein, Asst. Corporation Counsel, of counsel.

Frank S. Hogan, Dist. Atty. New York County, New York City, pro se; Hugh Anthony Levine, Asst. Dist. Atty., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiffs, G. I. Distributors, Inc., a magazine and book distributor, and Data Affiliates, Inc., a computer service company, bring this action pursuant to 42 U.S.C., section 1983, and preliminarily move for the return of their respective properties seized by the defendants pursuant to warrants of seizure issued by judges of the Criminal Court of the City of New York. It was a massive seizure —the plaintiffs' premises were stripped clean. In the instance of the plaintiff distributor, initially six samples each of fifty-five alleged obscene magazines were seized; in addition, 19,000 copies of the fifty-five items were crated in 221 separate cartons, confiscated by the police and set aside in the warehouse under police guard; also seized were all its business records of every kind, nature and description. In the instance of the plaintiff Data Affiliates, Inc., which furnishes computer services to plaintiff distributor, as well as to eight other companies who have no connection with the plaintiff distributor, the seizure extended to electro-magnetic discs, tapes and other items used to prepare payroll billings and other services for the customers.

This application for the immediate return of the seized property brings into sharp focus the irreconcilable holdings between our Court of Appeals[1] and the New York State Court of Appeals[2] on applications for the return of alleged obscene or pornographic material seized under a warrant but without a prior adversary hearing. Our Court of Appeals holds that the First Amendment, as applied to the states by the Fourteenth Amendment, requires an adversary hearing before seizure. This court, of course, is bound to follow its ruling absent a doctrinal trend indicating a reversal of attitude with respect to its holding.[3] There is no such indication; to the contrary, recently it seemingly adhered to its position when it denied a stay of an order entered by Judge Pollack in reliance upon *Bethview* directing the return of seized films where no prior adversary hearing had been conducted.[4]

Plaintiff distributor offers no objection to the retention by the defendants of six copies of each of the fifty-five alleged obscene items, a total of 330, as sample evidence for use by the State in connection with the pending charges relating to such materials. The defendants are directed to return the remaining seized alleged obscene material —the 19,000 magazines which, it is clear, were seized as part of the initial search. They were not immediately removed as a matter of convenience to the police, and a subsequent hearing before a judge of the Criminal Court of the City of New York was held only after the 19,000 magazines had already been seized. For the purpose of determining prior restraint, the plaintiff G. I. Distributors had already been effectively prevented from distributing its wares and the public from reading them.[5]

1. Astro Cinema Corp. v. Mackell, 422 F.2d 293 (2d Cir. 1970); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970). *See also* Mod Amusement Co. v. Murphy, 335 F.Supp. 1267 (S.D.N.Y., filed Jan. 7, 1972); P. A. J. Corp. v. Murphy, 320 F.Supp. 704 (S.D.N.Y.1970).

2. People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971).

3. *Cf.* United States v. Ullmann, 221 F.2d 760, 762 (2d Cir. 1955), aff'd, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

4. Mod Amusement Co. v. Murphy, 335 F.Supp. 1267 (S.D.N.Y., filed Jan. 7, 1972). The motion to stay the order was denied by the Court of Appeals on January 12.

5. *Cf.* A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 212–213, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus

Constitutional requirements mandate an adversary hearing to determine obscenity prior to restraint or seizure, not a post-seizure hearing.

■ There remains the question as to other materials seized, which clearly do not come within the category of alleged obscene matter. The seizure here was of lock, stock and barrel; it included, in addition to the alleged contraband material, all plaintiffs' business records, from employee history cards to general ledgers, checkbooks, payroll records, order books and all items required in the conduct and performance of its business. The State contends that these other records, including those of Data Affiliates, Inc., were seized and intended for use as evidence in the criminal prosecution, and it argues even if the seizure was constitutionally overbroad, the court should not order their return but remit plaintiffs to their remedy in the state courts. However, upon the facts of this case, it would fly in the face of reality to direct the return of the alleged contraband material under *Bethview* and treat the balance of the mass seizure separately. The seizure interrupted the normal functioning of each plaintiff's business and effectively curtailed all their operations. In the instance of G. I. Distributors, the seized material constituted only a minor part of the publications distributed—less than 10%—yet it was prevented from distributing all its publications. In the case of the computer service plaintiff, the only relationship of its records to the distribution of purported pornography was the payroll billings for G. I. Distributors' employees. In end result, the defendants' seizure of (1) the alleged contraband material and (2) the ordinary books, records and other business documents

for the functioning of plaintiffs' respective businesses constituted an effective prior restraint because in combination they totally prevented G. I. Distributors from distributing its magazines and reaching the public. It was as effectively prevented from distributing by having its records or orders for magazines seized, without which it was unable to make any distribution, as it was by the seizure of the magazines themselves. As Mr. Justice Brennan stated in his concurring opinion in Dyson v. Stein: [6]

"If proved, [the alleged police conduct] would justify federal intervention. The mass seizure of some two tons of the issues of the newspaper without a prior judicial determination of the alleged obscenity of the issues was unconstitutional. . . . Similarly, the mass seizure of the tools and equipment required to prepare the newspaper—insofar as it disabled appellee from publishing future issues—infringed the principle of Near v. Minnesota, 283 U.S. 697, (1931)."

■ Subsequent to *Bethview* and *Astro Cinema*, the Supreme Court decided a series of cases indicating that absent a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," federal courts should not intervene in pending state criminal proceedings.[7] While it does not now appear that the defendants can be charged with bad faith or harassment, since they followed the procedure approved by the New York Court of Appeals, there are sufficient extraordinary circumstances with a showing of irreparable injury to warrant federal injunctive relief. Unlike a mere possibility of a "chilling effect" on First Amendment freedoms,[8] here there was a complete

v. Search Warrant of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

6. 401 U.S. 200, 204, 91 S.Ct. 769, 771, 27 L.Ed.2d 781 (1971).

7. Younger v. Harris, 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971). *See also* Byrne v. Karalexis, 401 U.S.

216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

8. *Cf.* Younger v. Harris, 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

and total restraint upon the operations of a magazine distributor, the overwhelming majority of whose distribution could not constitutionally be prevented even after an adversary hearing. Unlike the situation in Perez v. Ledesma,[9] there is no adequate remedy under New York law to obtain the prompt return of the material at issue.[10] The remedy exists in theory, but in practice has been cumbersome and inefficacious.[11] Moreover, in the light of New York's highest court's most recent ruling, it would appear futile to use it for the return of the alleged obscene material, since that court seemingly determined that a prior adversary hearing is not a prerequisite for such seizure.[12] Further, there is far less interference with the pending state proceeding than that involved in *Perez,* for here all of the materials returned to the plaintiffs would still be available for use in the criminal prosecution.[13] Plaintiffs do not seek an order suppressing the use of such evidence in the state prosecution.[14] Nor do they seek injunctive relief enjoining the state court prosecution or injunctive relief against future seizures. In any event, Younger v. Harris and related cases were before our Court of Appeals in the *Mod Amusement* case,[15] and, as already noted, the court refused to stay Judge Pollack's order returning the allegedly obscene films, an apparent indication that the clear holdings in *Bethview* and *Astro Cinema* have not been compromised by the recent Supreme Court decisions.[16]

Accordingly, defendants are directed to return the materials seized to the plaintiffs, without prejudice to the right of the defendants to subpoena the same for use as evidence in the pending criminal proceeding. The plaintiffs, as a condition of the granting of their application, are enjoined from disposing of any of the business books, records and other material directed to be returned, so that they will be available for subpoena in the State prosecution.[17]

This order is stayed until noon, January 20, 1972.

9. 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

10. *See* Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967); Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969).

11. *Cf.* Monroe v. Pape, 365 U.S. 167, 174, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

12. *See* People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971). This court uses the word "seemingly" because despite *Heller's* explicit holding and its extensive discussion of why an adversary hearing is unnecessary, the final paragraph attempted to distinguish a motion picture seizure from the massive seizure of publications.

13. *See* Astro Cinema Corp. v. Mackell, 422 F.2d 293, 296–297 (2d Cir. 1970).

14. *Cf.* Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951).

15. Mod Amusement Co. v. Murphy, 335 F.Supp. 1267 (S.D.N.Y., filed Jan. 7, 1972).

16. *But see* Rialto Theatre Co. v. Wilmington, 440 F.2d 1326 (3d Cir. 1971) (per curiam); Eve Productions, Inc. v. Shannon, 439 F.2d 1073 (8th Cir. 1971) (per curiam).

17. *See* Astro Cinema Corp. v. Mackell, 422 F.2d 293, 296–297 (2d Cir. 1970).