**STAR DISTRIBUTORS, LTD., et al.,**
**Plaintiffs,**

v.

**Frank S. HOGAN, individually and in his capacity as District Attorney of New York County, et al., Defendants.**

**No. 72 Civ. 208.**

United States District Court,
S. D. New York.

Feb. 9, 1972.

Ralph J. Schwarz, Jr., New York City, Robert Eugene Smith, Atlanta, Ga., for plaintiffs.

Frank S. Hogan, pro se; Hugh Anthony Levine, Asst. Dist. Atty., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendant Murphy; Michael M. Klein, Asst. Corp. Counsel, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The facts in this case not only parallel, but in some respects are more egregious than those upon which this court, in G. I. Distributors, Inc. v. Murphy,[1] ordered the return of a massive amount of publications and business records seized from a book and magazine distributor and a firm supplying the latter with computer services, and where the seizure had occurred without a prior adversary hearing to determine the alleged obscene nature of the publications. Our Court of Appeals denied the defendants' motion (the same defendants as in the instant suit) to stay the order directing the return of the seized property; thereafter, Mr. Justice Blackmun refused to stay the mandate of the Court of Appeals.

This action is brought under section 1983 of Title 42. Star Distributors, Ltd., one of the plaintiffs, is a publisher and distributor of sex-oriented material; the individual plaintiffs are its stockholders, officers or employees, and all are presently defendants in a state criminal prosecution, charged with the wholesale promotion of obscene material,[2] a magazine entitled "Questions and Answers", Vol. 1 No. 1. Armed with a search warrant, issued without a prior adversary hearing by a judge of the New York City Criminal Court, stating there was probable cause to believe "Questions and Answers", Vol. 1 No. 1 was obscene, and that Star Distributors' books and records were evidence of the crime of wholesale promotion of obscene material, a squad of eight policemen and two accountants searched Star's premises for more than three and a half hours. The search extended to an examination of hundreds of titles of over 100,000 publications on the premises. Despite the intensive search, the police did not find any copy of "Questions and Answers", Vol. 1 No. 1; nonetheless, they executed the warrant by the seizure of Star Distributors' current business records, including its general ledger, journal, cash receipts, and cash disbursements books. The seizure extended to an address and telephone book, cancelled checks, check stubs and even included work sheets of an accountant then engaged in preparing the firm's tax returns, as well as tentative drafts of income tax returns. In sum, it was a "lock, stock and barrel" seizure of all current vital business records. Indeed, the seizure was so pervasive that the defendants do not dispute, as indeed they cannot, that without the books and records, the plaintiffs, who have over 100,000 paperbacks, books and magazines on their premises that were not seized and whose obscenity is not here asserted, were effectively halted in their daily operation and threatened with extinction. The defendants having refused upon demand to return the records, the plaintiffs seek a preliminary injunction for such relief.

Little need be added to what has already been said in *G. I. Distributors*. While it may be diffcult to draw the dim line between constitutionally protected speech and obscenity, it is clear that restrictions upon speech can only be effected by the use of "sensitive tools".[3] Criminal sanctions for obscenity violations may be imposed upon a defendant only after he has been afforded all the constitutional safeguards of the criminal process; so too, administrative sanctions may be imposed only after adequate procedural safeguards have been observed to prevent suppression of non-obscene publications protected by the Constitution.[4] And it is well settled

1. 336 F.Supp. 1036 (S.D.N.Y.1972).

2. N.Y.Penal Law § 235.06 (McKinney Supp.1971).

3. Marcus v. Search Warrant, 367 U.S. 717, 731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

4. *See* Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 69–71, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

that, to protect First Amendment rights, such procedural safeguards require that before publications may be seized, a prior adversary hearing must be had on the issue of obscenity,[5] and as long as *Bethview* remains the controlling law in this Circuit,[6] a seizure without such a hearing requires the return of the alleged obscene publications.

The defendants, however, argue that since the search yielded only business books and records and the alleged obscene magazine was not seized, the command of *Bethview* does not apply—in short, they say plaintiffs' relief must come from the state courts on a motion for the suppression of the seized records and for their return. A similar contention made by the defendants with respect to the non-contraband material seized in the *G. I. Distributors* case, which included all the plaintiffs' business records, was made to this Court and argued to the Court of Appeals, but was rejected. The situation here is even more compelling, since the warrant issued without a prior adversary hearing was for the seizure of the alleged obscene magazine, which was never seized. Absent allegations of obscenity of that magazine, there was no basis for the issuance of a warrant with its additional provision for the seizure of the firm's business records. By the seizure of its records, the plaintiffs' business was brought to a virtual standstill—in end result, they were as effectively restrained from distributing the non-ob-

scene books and magazines on their shelves and the public prevented from reading them as if the very publications themselves were seized or an injunction issued preventing their distribution; and it is unchallenged that those publications could not have been seized even after an adversary hearing. It would vitiate the requirement of an adversary hearing before seizure of allegedly obscene material if the state could achieve the same result and indeed effect a far broader restraint by simply incapacitating a distributor of publications by a mass seizure of his business books and records.[7] While the state argues that this seizure was necessary to gather evidence for the pending criminal prosecution, the method employed was constitutionally impermissible, for it worked a complete and total restraint upon even the lawful activities of a publisher and distributor and deprived the public of an opportunity to receive its non-obscene publications without any of the procedural safeguards required by the First Amendment. Further, the state has presented no explanation why other, less intrusive, means of obtaining the evidence, such as the use of the subpoena power, could not have been employed.[8]

Nor, as this Court pointed out in *G. I. Distributors*, is a different result demanded by the recent Supreme Court cases indicating that absent a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," federal courts

5. *See* Quantity of Books v. Kansas, 378 U.S. 205, 212–213, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) ; Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

6. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970). *See also* G. I. Distributors, Inc. v. Murphy, 336 F.Supp. 1036 (S.D. N.Y., 1972) ; Overstock Book Co. v. Barry, 436 F.2d 1289, 1296 (2d Cir. 1970) ; Astro Cinema Corp. v. Mackell, 422 F.2d 293 (2d Cir. 1970) ; Mod Amusement Co. v. Murphy, 335 F.Supp. 1267 (S.D.N.Y.1972) ; P.A.J. Corp. v.

Murphy, 320 F.Supp. 704 (S.D.N.Y. 1970).

7. *See also* Bongiovanni v. Hogan, 309 F.Supp. 1364, 1366 (S.D.N.Y.1970) (return of projector lenses ordered) ; Sokolic v. Ryan, 304 F.Supp. 213, 216–218 (S.D. Ga.1969) (reinstatement of business license ordered) ; Bee See Books Inc. v. Leary, 291 F.Supp. 622, 626–627 (S.D. N.Y.1968) (stationing of police in book stores enjoined).

8. *Cf.* United States v. Robel, 389 U.S. 258, 267–268, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) ; Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

should not interfere in pending state criminal proceedings.[9] To order the materials returned upon conditions hereafter specified which adequately protect the state's interest is far less interference with the state's prosecution than the actions there proscribed, such as ordering suppression of such material in state courts or enjoining a present or future criminal proceeding. Plaintiffs here do not seek an order suppressing the use in evidence in the state prosecution of the seized books and records, nor do they seek injunctive relief enjoining the state's prosecution against them. What they do seek is the return of vital records, without which they cannot function. Further, were Younger v. Harris and its kin directly applicable, there are sufficient extraordinary circumstances with a showing of irreparable injury to justify federal injunctive relief, for here there has been a massive and total restraint upon constitutionally protected speech. And there is no adequate remedy under New York law for the prompt return of the materials. The state no longer maintains, as it did at oral argument, that there is a new statutory provision for the return of the materials,[10] since this is but the exact successor of the previous state remedy already found cumbersome and inefficacious.[11] The state now maintains that since these materials are being held by the District Attorney rather than by the Police Property Clerk, the two-step process previously used—obtaining a court order for the return of the property and then bringing a separate action against the property clerk—will no longer be needed; the argument is that the District Attorney will return the property without waiting for an action against him. However, it appears that such seized property is to be turned over to the Property Clerk "as soon as practicable."[12] Further, even if the District Attorney retained custody of the property, he could invoke the statutory provision that the property need only be returned if "not otherwise subject to lawful retention," and, as the property clerk has done, wait for a judicial determination of this issue in a separate proceeding, one not noted for expeditious conclusion.

Moreover, it is realistic to recognize that so long as the conflict exists between the holding of the New York State Court of Appeals and our own Court of Appeals on the constitutional need for a prior adversary hearing on the issue of obscenity,[13] that the state's enforcement and prosecution authorities will follow the ruling of its highest court and contend that the seized property "is subject to lawful detention." In any event, the state's very argument that a remedy for the prompt return of illegally seized material now exists was made to our own Court of Appeals when it rejected the state's motion for a stay in *G. I. Distributors,* an apparent indication that the Court still adheres to its view that the New York remedy remains wholly inadequate—that it is a remedy in theory but not in fact.

The motion for the return of the seized property is granted, but upon the express condition that each of the plaintiffs and all persons acting for them or under their control will keep and pre-

---

9. Younger v. Harris, 401 U.S. 37, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also* Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

10. N.Y.Crim.Proc.Law § 710.70(1) (McKinney 1971).

11. *See* Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967); Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969).

12. New York City Admin.Code § 435–4.0 (b).

13. *Compare* People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971), *with* Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970).

serve such property intact, so that it will be available for subpoena under judicial process, and they hereby are enjoined to keep them so available.

This order is stayed until 4 p. m., February 10, 1972.