M. Marvin Berger, J.
On July 28,1971, the Police Department of the City of New York, executed a search warrant authorizing seizure of rolls of 8mm color film and six coin-operated viewing machines housing the film located in the Jaybird Book Store in downtown Brooklyn.
The warrant was issued by Criminal Court Judge Howard GLIEDMAN.
The warrant was based, in part, on an affidavit sworn to on July 28, 1971 by Police Sergeant Michael Smith, who viewed the film at the Jaybird Book Store on July 27,1971 and described the machines and the sexual activity depicted by the film in each machine. According to Smith’s affidavit, the scenes showed nude males and nude females embracing and engaging in oral sexual contact with exposed genitalia and simulating acts of sexual intercourse, allegedly in violation of section 235.05 of the Penal Law.
The warrant recited that Judge Gliedman had personally viewed each of the films in the six machines and had determined that they were obscene within the definition of section 235.05 of the Penal Law, before issuing the warrant.
A hearing was held before this court on February 28, 1972 in connection with defendants ’ motion to suppress the evidence.
Sergeant Smith testified that Judge Gliedman had signed the warrant on the sidewalk in front of the Jaybird Book Store immediately after viewing the films.
On April 19,1972 the court denied the motion in a short memorandum opinion with the notation that a fuller opinion would be filed.
Meanwhile memoranda of law were submitted by the People and defendants.
The defendants argue that they were entitled to an adversary hearing to determine whether the films and the equipment needed to exhibit them, enjoyed the protection of the First Amendment to the United States Constitution.
They assert also that they were entitled to cross-examine the officer who executed the warrant to show absence of pandering, the extent of defendants’ safeguards against viewing of the material by minors and the scope of the search and the manner in which the warrant was executed.
At the outset, there appears to be no substantial question concerning the latter points. The elements of pandering and viewing by minors were not vital to the claim of obscenity as the crime was framed by the information.
The testimony established that the peep shows comprising the six viewing booths, the projectors found in the booths and the *715 six rolls of film threaded into the projectors were seized. A seventh roll of film, found behind a counter, of a nature similar to the film in the projectors, was also taken. A quantity of money was taken, vouchered and returned to the defendants.
The store’s considerable stock of books and magazines was not seized. Business records were left untouched. Only the film operation was affected by the seizure and there was evidence that the store continued to operate its book and magazine business.
Accordingly, we are left with the troublesome, recurrent issue' of the propriety of a seizure of material which, on its face, would appear to be constitutionally protected. The larger issue has been capsulized into the question of whether a warrant may be issued in the absence of an adversary hearing on the question of whether the film was obscene.
That issue has been the subject of rulings of the Federal courts and the highest court of New York, the Court of Appeals.
The most recent pronouncement of the New York courts is People v. Heller (29 N Y 2d 319). There, in a five to two decision, the Court of Appeals sustained the propriety of a seizure based on a warrant issued by a Judge who attended a public theatre at which the film was exhibited, concluded that probable cause to institute prosecution was present and issued the warrants.
Judge Bergan’s majority opinion noted (p. 322): “ This independent judicial action met fully the basic rule laid down in Marcus v. Search Warrant (367 U. S. 717) as later analyzed in the several opinions in A Quantity of Books v. Kansas (378 U. S. 205); that the seizure of evidence as obscene, and arrests on this ground, should not be left to the judgment of policemen, but should have judicial supervision.”
The defendants urge this court to consider G. I. Distrs. v. Murphy (336 F. Supp. 1036) decided some six weeks after the Heller decision. They state that the opinion of Judge Edwabd Weinteld, the District Court Judge in that case, said that11 the ‘ doctrinal trend ’ mandated a finding that prior adversary hearings are constitutionally required before seizure of that which is arguably protected under the First Amendment. ’ ’
This is an oversimplified, if not inaccurate, interpretation of Judge Weineeld’s language. He said, supra, p. 1037, that “ our Court of Appeals [meaning of course, the Court of Appeals for the Second Circuit] holds that the First Amendment, as applied to the states by the Fourteenth Amendment, requires an adversary hearing before seizure. This court, of course, is bound *716 to follow its ruling absent a doctrinal trend indicating a reversal of attitude with respect to its holding.” (Emphasis supplied).
The plain meaning of Judge Weiefeld’s language is that the Second Circuit’s holdings require an adversary hearing before seizure. In Judge Weiefeld’s words (supra, p. 1037), “ [the] application for the immediate return of the seized property brings into sharp focus the irreconcilable holdings between our Court of Appeals and the New York State Court of Appeals on applications for the return of alleged obscene or pornographic material seized under a warrant but without a prior adversary hearing. ’ ’
Although the instant application is not one for the return of the seized property, the motion seeking its suppression is so closely aimed in the same direction, that it is tantamount to such relief.
Some important distinctions must be made between the instant ease and, on the other hand, the G. I. case and the Second Circuit decisions in Astro Cinema Corp. v. Mackell (422 F. 2d 293) and Bethview Amusement Corp. v. Cahn (416 F. 2d 410, cert. den. 397 U. S. 920).
For one thing the G. I. case involved some 55 alleged obscene items but the seizure, characterized by Judge Weiefeld (336 F. Supp. 1036, 1038, supra) as “of lock, stock and barrel ”, included some 19,999 magazines, “ all plaintiffs’ business records, from employee history cards to general ledgers, checkbooks, payroll records, order books and all items required in the conduct and performance of its business * * * The seizure interrupted the normal functioning of each plaintiff’s business and effectively curtailed all their operations. ’ ’
Here, not only was the seizure limited to films and the equipment needed to project and view them, but the remaining business continued to operate without apparent hindrance.
Following the submission of the instant matter and the issuance of the preliminary opinion, the court became aware of the fact that the Supreme Court of the United States had granted certiorari to review the holding of our Court of Appeals (Heller v. New York, 406 U. S. 916). This court understands that the People did not oppose the petition for certiorari but even stated that a determination of the issue between the Court of Appeals and the Second Circuit would be welcomed by the prosecuting authorities.
Without presuming to forecast the outcome of the Supreme Court’s review of Heller, this court, as stated in its earlier memorandum opinion, is constrained as of this time, to respect *717 the authority of the New York Court of Appeals, rather than follow the Second Circuit’s holdings in Astro and Bethview (supra).
This court intends no disrespect to the eminent Court of Appeals for the Second Circuit, in disagreeing with the statement in defendants’ brief, that reliance on the New York Court of Appeals decision in People v. Heller (29 N Y 2d 319, supra) “ fails to recognize that the Court of Appeals for the Second Circuit is in a very real sense the second highest court in the land insofar as this court (the Criminal Court of the City of New York) is concerned with respect to First Amendment issues.”
The problems arising from interaction between the two constitutional safeguards — the First and Fourth Amendments — were highlighted in the recent opinion of my learned colleague, Judge Irving Lang, in People v. P. A. J. Theater Corp. (66 Misc 2d 373). As he points out, the First Amendment protects not only an individual’s rights to publish and disclose, but the coeval right of the public to see and know, while the Fourth Amendment seeks to protect the privacy of the individual.
Even allowing for the sensitivity which the court must exercise in issuing warrants for publications and films in order to avoid violation of the right to free speech and free press (Lee Art Theatre v. Virginia, 392 U. S. 636) suppression is not the remedy.
As Judge Lang notes (supra, p. 377) “if we assume that a First Amendment violation was involved the remedy is clearly ■not suppression * * * but exposure — the right of the public to see the film prior to a judicial determination of obscenity after an adversary hearing * * * It would be the epitome of logical inconsistency to maintain that the First Amednment protects the right of a person to show films and the right of the public to see films but prohibits that right to Judges and juries.”
The propriety of issuance of search warrants for motion pictures based on antecedent judicial scrutiny, despite the absence of a prior adversary proceeding is discussed fully in Bingel’s Searches, Seizures, Arrests and Confessions (pp. 401-404).
The motion to suppress is denied.