**VALI BOOKS, INC., Plaintiff,**

v.

**Patrick MURPHY, Commissioner of the Police Department of the City of New York, and Frank S. Hogan, District Attorney of New York County, Defendants.**

No. 72 Civ. 974.

United States District Court,
S. D. New York.

May 19, 1972.

Jay Goldberg, New York City, for plaintiff.

J. Lee Rankin, Corp. Counsel, New York City, for defendant Murphy; Michael M. Klein, Asst. Corp. Counsel, of counsel.

Frank S. Hogan, Dist. Atty., New York County, for defendant Hogan; Barry M. Fallick, Asst. Dist. Atty., of counsel.

METZNER, District Judge:

Plaintiff seeks a preliminary injunction ordering the defendants to return various reels of movie film seized on the plaintiff's premises and restraining the defendants from any future seizures without a preliminary adversary hearing on the issue of obscenity. Jurisdiction is predicated on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

As will be later detailed, film was seized on four different occasions by New York City police officers in conjunction with alleged violations of the New York obscenity statute (Penal Law § 235.05). Admittedly, the seizures were not preceded by an adversary hearing and judicial determination authorizing the seizures. We are not concerned with the question of whether or not the films are in fact obscene, but only with the procedures followed in seizing them. The question is whether these procedures were constitutionally deficient because they did not adequately safeguard the public against the suppression of nonobscene material. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). The issue has been presented many times, too numerous to cite, with factual variables causing different results. See United States v. 50 Magazines, 323 F. Supp. 395 (D.R.I.1971), and cases cited therein.

Plaintiff operates what is commonly referred to as a peep-show business in a store on 42nd Street. Seventeen movie projectors are available for individual customers to view what are described as "sex oriented adult movies." Plaintiff claims that it has between 1,000 to 1,500 customers per week. I gather from the papers that a customer pays 25 cents to view a segment of the film for a couple of minutes on one of the machines. If he likes what he sees, he can purchase the entire reel of film or continue paying 25 cents for each segment until completion of the reel. An entire reel appears to have a running time of about 12 minutes.

The defendants here are the Police Commissioner of New York City and the District Attorney of New York County. On January 18, 1972 a police officer entered the store, viewed the entire film, in six segments, of "The Plumber Cometh," arrested an employee of plaintiff, charging obscenity in violation of Penal Law § 235.05, and then seized 45 reels of film, all without a prior adversary hearing into the obscenity of "The Plumber Cometh." The papers do not indicate the titles of these reels. I gather that the 45 reels were not of "The Plumber Cometh," but were taken indiscriminately from a closed cabinet in the store.

On February 9, 1972 a police officer again entered the store, viewed five segments of film (it is not clear whether the segments were parts of a single title or five different titles), arrested another employee and the president of plaintiff, and seized 61 reels of film, all without a prior adversary hearing as to obscenity. The 61 reels were taken indiscriminately from the cabinet, their titles are not indicated, and there is no showing that they were related to the segments viewed by the officer. The complaint filed by the police stated that there was a sign over the counter which read, "We have a large assortment of 8MM Male Action Film, ask at counter."

On February 14, 1972 a police officer acting pursuant to a search warrant for the film "The Plumber Cometh," issued without a prior adversary hearing, but after viewing by the court, again entered the store and seized six boxes containing six reels of film entitled "The Plumber Cometh."

On March 2, 1972 a police officer again entered the store, arrested an em-

ployee for the second time and seized five reels of a film identified as #M66 and 37 other films. This occurred after another police officer had purchased a reel of the M66 film which is described in the complaint executed by the arresting officer as depicting nude males and females engaged "in sexual intercourse and deviate sexual intercourse."

Defendants do not dispute the facts as set forth. The arguments advanced against granting the relief requested are that the films are blatantly pornographic, that the arrests were made on probable cause, that this court should not interfere with pending state court criminal proceedings, that plaintiff has an adequate remedy in the state courts, and finally that the prosecution and the police acted in good faith reliance on a decision in this court that a seizure of specimens of allegedly obscene materials could be made without a prior adversary proceeding.

In *A Quantity of Copies of Books, supra*, all copies of 31 titles of books found on plaintiff's premises, amounting to 1,715 volumes, were seized. The Court held that:

"It is our view that since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P-K [the plaintiff] was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient." 378 U.S. at 210, 84 S.Ct. at 1725.

The rationale for the holding is found in Marcus v. Search Warrant, 367 U.S. 717, at pages 736–737, 81 S.Ct. 1708, at page 1718, 6 L.Ed.2d 1127 (1961), where the Court said:

". . . there is no doubt that an effective restraint—indeed the most effective restraint possible—was imposed prior to hearing on the circulation of the publications in this case, because all copies on which the [sheriff] could lay [his] hands were physically removed . . . from the

premises of the wholesale distributor. An opportunity . . . to circulate the [books] . . . and then raise the claim of nonobscenity by way of defense to a prosecution for doing so was never afforded these appellants because the copies they possessed were taken away. Their ability to circulate their publications was left to the chance of securing other copies, themselves subject to mass seizure under other such warrants. The public's opportunity to obtain the publications was thus determined by the distributor's readiness and ability to outwit the police by obtaining and selling other copies before they in turn could be seized."

A film, like a book, is entitled to the protection of the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). This circuit has held that an adversary hearing be held prior to seizure of a full-length film being exhibited in the usual motion picture theater. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2 Cir. 1969); Astro Cinema Corp. v. Mackell, 422 F.2d 293 (2 Cir. 1970).

It is clear from the opinions in the latter two cases that the court found it necessary to equate the seizure of an entire motion picture with the seizure of all copies of a specified title in the book cases in order to sustain the requirement for a preliminary adversary hearing. I do not find any distinction between all copies of one title or of many titles. The operative fact, as I read the rationale of the cases, is a massive seizure which prevents a large segment of the public from having access to a particular work which may be entitled to First Amendment protection. United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970); 70 Colum.L.Rev. 1403, 1416 (1970).

In *Bethview Amusement, supra,* the court assumed that some 4,000 persons a week attended the theater. "Preventing so large a group in the community from

access to a film is no different, in the light of first amendment rights, from preventing a similarly large number of books from being circulated." 416 F.2d at 412. A similar finding was made in *Astro Cinema, supra.* 422 F.2d at 295.

We are not concerned here with such huge numbers of the deprived public. We are dealing with a store containing 17 projection machines with numerous titles available for exhibition. Since the moving papers do not claim exclusivity of "The Plumber Cometh," I should add another factor, which is the number of such stores in the area.

■ This case therefore does not present the fact situation which culminated in the rules enumerated in *A Quantity of Copies of Books, supra,* or *Bethview Amusement, supra.* Furthermore, seizure of a few samples to be used as evidence does not become illegal absent a prior adversary hearing. United States v. Wild, 422 F.2d 34, 39 (2d Cir. 1969); Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y.1969); cf. *Astro Cinema, supra,* 422 F.2d at 296. However, the indiscriminate seizure of film without regard to the charge on which arrests were made or unrelated to the basis for the issuance of a search warrant is illegal.

■ More specifically, I find that since the arrest on January 18 resulted from viewing "The Plumber Cometh" the 45 reels seized at the time must be returned. There is no proof that any of the reels seized were copies of that film or that the arresting officers viewed them before seizure. The same finding must be made with regard to the seizure of February 9.

■ The seizure of February 14 stands on a different footing. It was made pursuant to a search warrant after the film of "The Plumber Cometh" was viewed by the issuing court. The seizure was specifically limited to six copies of this film. The number seized is important because New York Penal Law § 235.10(2) creates an inference of in-

tent to possess for purposes of promoting the film if the owner has six or more identical obscene articles. See Overstock Book Co. v. Barry, 436 F.2d 1289, 1294 (2d Cir. 1970). The seizure was perfectly proper.

■ Finally, the seizure on March 2 of the five copies of M66 was proper after the arresting officer had viewed and bought a copy of that film. The seizure of an additional 37 reels of other films was improper.

Defendants have argued that the case of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), severely curtails any interference by a federal court with actions taken in connection with a state criminal prosecution. They urge that we do not have here any of the factors justifying federal action as set forth in that opinion, and that consequently the motion should be denied in its entirety.

In People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971), the highest court in the state held that there need not be any adversary proceeding prior to the issuance of a search warrant in the usual motion picture case. The court specifically said that the *Bethview Amusement* and *Astro Cinema* decisions by the Court of Appeals for this circuit "go beyond any requirement imposed on State courts by the Supreme Court." An application for certiorari is pending in the *Heller* case. It is evident at this time that state processes will not adequately protect plaintiff's constitutional rights as interpreted by the Court of Appeals for this circuit. Happily I need not engage in weighing the relative merits of the opposing views and making a valued judgment as to which I should follow. The line of command is clear and I have no options.

The prayer for relief is granted to the extent of directing the return of those reels of film improperly seized, and is otherwise denied.

So ordered.