490 F.2d 1167
 G.I. DISTRIBUTORS, INC., et al., Plaintiffs-Appellees,
v.
Patrick MURPHY, Individually and in his capacity as Police
Commissioner of NewYork City, Defendant, Frank S. Hogan,
Individually and in his capacity asDistrict Attorney of New
York County, Defendant-Appellant.
 Cal. 431, Docket 72-1208.
 United States Court of Appeals, Second Circuit.
 Dec. 20, 1973, Certiorari Denied April 15, 1974, See 94
S.Ct. 1941.
 
 Herald Price Fahringer, Buffalo, N.Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., of counsel, on the brief), for appellees.
 Frank S. Hogan, Dist. Atty., New York County, New York City, appellant pro se. (Michael R. Juviler and Hugh Anthony Levine, Asst. Dist. Attys., of counsel, on the brief).
 Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 By an order dated June 25, 1973, the Supreme Court vacated the decision of this court in G.I. Distributors v. Murphy, 469 F.2d 752 (1972), and remanded the case to us for further consideration in light of its decisions in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), United States v. Twelve 200-Ft. Reels of Super 8 mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed. 500 (1973), United States v. Orito, 413 U.S. 123, 93 S.Ct. 2674, 37 L.Ed.2d 500 (1973), Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). Having given careful consideration to these decisions, we conclude that they do not require us to alter our prior opinion.
 
 
 2
 In our earlier opinion, we held that G.I. Distributors' first amendment rights had not been violated when the police temporarily sequestered overnight 19,000 of the company's magazines until an adversary hearing could be held and a warrant obtained the following morning. We emphasized the unique facts of the case. Armed with search warrants authorizing seizure of six copies of 56 magazines[1] which allegedly were obscene, the police went to the warehouse of G.I. Distributors on January 6, 1972 and discovered the additional 19,000 copies of the publications sometime time after 6 P.M. in the course of their search of the warehouse. Aware that these magazines might be destroyed or moved to a hiding place, they segregated the copies and stationed a guard on the premises overnight. As soon as possible the following morning, a full adversary hearing was held before Judge Moldow of the New York City Criminal Court. After examining samples of the magazines, he found probable cause to believe they were obscene and issued a search warrant authorizing the seizure of the 19,000 copies, which were then removed from the warehouse.[2]
 
 
 3
 In arguing that the minimal prior restraint exercised by the police in this case was unconstitutional, G.I. Distributors relies principally on the Supreme Court's decisions in Heller v. New York and Roaden v. Kentucky,supra. We believe, however, that neither of these cases supports G.I. Distributors' contention. In Heller, the Court actually affirmed that part of a decision of the New York Court of Appeals[3] which failed to find an infringement of first amendment rights, although an allegedly obscene film had been seized without a prior adversary hearing. Echoing the words of the Court of Appeals, the Supreme Court in Heller concluded that there is no absolute constitutional requirement of an adversary hearing prior to a seizure of a movie; a prompt judicial determination following the seizure will often be an adequate guarantee of first amendment rights.
 
 
 4
 The procedure followed by the police in the present case was in no way at odds with this holding. Within hours after the police came across the 19,000 magazines and set them aside, an adversary hearing was held at which Judge Moldow found probable cause to believe the publications were obscene. Nevertheless, G.I. Distributors argues that much of the language in Heller, if not its holding, requires us to reverse our earlier decision. In particular, it is urged that the Supreme Court condemned all prehearing seizures, except those in which a limited number of copies of the allegedly obscene materials are seized solely for evidentiary purposes. In our view, there is no basis for such a broad reading of Heller. Moreover, the prehearing sequestration which occurred here was such a temporary restraint that no real injury was done first amendment rights. At worst, G.I. Distributors was prevented from distributing its publications for a few hours on the morning of January 7, although even this is by no means certain since the record reveals no attempt at distribution by the company.
 
 
 5
 There is little similarity here with the massive prehearing seizures for the purpose of the permanent destruction of books which occurred in Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) and Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). As we noted in our earlier decision:
 
 
 6
 Marcus involved an attempt to suppress allegedly obscene books by means of a vague search warrant which in effect allowed the police to seize anything that they deemed to be obscene. A Quantity of Books concerned the seizure of a large number of books under a statute which did not permit a hearing on the books' obscenity until at least 10 days after the seizure and did not require the judge to make a speedy decision after the hearing. Unlike these cases, no extended interruption in the public's access to the magazines nor long term suppression of possibly nonobscene literature was threatened here. 469 F.2d at 756.
 
 
 7
 But perhaps the most telling reason for not requiring a preseizure adversary hearing in cases such as the present one is the danger that, having been forewarned about the evidence the government is seeking, putative defendants may attempt to destroy, conceal, or otherwise dispose of this incriminating material. Indeed, as the Heller Court stated, in terms likewise applicable to the magazines at issue here:
 
 
 8
 Counsel for New York has argued that movie films tend to 'disappear' if adversary hearings are afforded prior to seizure. We take judicial notice that such films may be compact, readily transported for exhibition in other jurisdiction, easily destructible, and particularly susceptible to alteration by cutting and splicing crucial parts of film. 93 S.Ct. 2789, 2795 (1973).
 
 
 9
 G.I. Distributors also argues that Roaden v. Kentucky, supra, necessitates a reversal of our earlier decision. We disagree. Roaden involved a warrantless seizure of a film incident to the arrest of the manager of the drive-intheatre at which the film was being exhibited. Holding that the seizure was unconstitutional, the Supreme Court emphasized that there had been no prior probable cause determination by a judicial officer on the question of the obscenity of the movie. On the basis of this holding, it is urged here that the warrantless seizure of the 19,000 magazines by the New York City police was likewise unconstitutional. But in arguing that the language used in Roaden should be applied broadly to the present case, G.I. Distributors overlooks the Supreme Court's admonition in Roaden that each case must be determined on the basis of its particular facts. The fourth amendment is not to be read 'in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material.' 93 S.Ct. 2796, 2800 (1973).
 
 
 10
 The circumstances under which the magazines were seized in the present case differ markedly from those under which the seizure of film took place in Roaden. In the latter case the film seized was being shown at a commercial theatre during regularly scheduled performances to the general public. Without difficulty, the sheriff could have first obtained a warrant and then seized the movie. In contrast, the police here stumbled upon additional copies of obscene magazines in a warehouse at night and sought merely to preserve them until an adversary hearing could be held and a search warrant obtained the following morning, by which time the contraband might otherwise have been destroyed, concealed, or transferred out of the jurisdiction. Whatever the police action in this case be called, it was the most limited form of detention consistent with preventing removal of the magazines prior to getting a warrant the next morning. The police did not destroy the material, transport it, or apparently even interfere with the owners' access to it. They merely prevented the owners from moving the magazines for the period between the search and the adversary hearing the next morning. The courts have often advised police that when they have no warrant for a search or seizure, the proper course is to watch the item under suspicion in order to prevent it from being moved, during which time the search warrant can be obtained. Cf. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Marshall, 488 F.2d 1169, 1189-1190 (9th Cir. 1973). Essentially, that is what happened here. The police kept watch over the material pending the issuance of a warrant. Perhaps they could have gotten a warrant that night. Instead, they chose to get the warrant after the adversary hearing-- certainly a reasonable course to follow, since having a hearing before confiscating all the magazines would actually benefit the owners. The procedure followed here, in short, may be termed a 'seizure,' but if it is, it is the most limited form of seizure imaginable, and therefore should not be classified as one with warrantless seizures that 'become in themselves a form of censorship.' Heller v. New York, 93 S.Ct. 2787, 2793 (1973).
 
 
 11
 Moreover, the police had ample grounds for assuming that the 19,000 publications were, indeed, contraband. In contrast to Roaden, in which 'the seizure proceeded solely on a police officer's conclusions that the film was obscene,' in the present case all 19,000 magazines sequestered temporarily overnight were copies of publications which two judges had already found probable cause to believe were obscene and for which warrants had been issued.[4] Acting entirely on the basis of this judicial determination of obscenity, the police did not go any further than was absolutely necessary under the circumstances in sequestering these copies overnight until a supplemental warrant could be obtained the following day permitting their removal from the warehouse.
 
 
 12
 Affirmed.
 
 FEINBERG, Circuit Judge (dissenting):
 
 13
 I dissent for two reasons from the reversal of Judge Weinfeld's order and from the adherence to our prior opinion.
 
 
 14
 The first ground is set forth in my original dissent, G.I. Distributors, Inc. v. Murphy, 469 F.2d 752, 758-760 (2d Cir. 1972). There, I distinguished between seizing all copies of an allegedly obscene book or magazine, such as occurred here in the overnight 'sequestration,' and seizing only a few copies for evidentiary purposes; I expressed the view that in the former situation, a prior adversary hearing must be held. The reasons for that view are fully explained in my prior dissent, which I incorporate here. Since then, the Supreme Court's decisions in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 2794, 37 L.Ed.2d 745 (1973), and Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 2800, 37 L.Ed.2d 757 (1973), by citing with approval A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), upon which I mainly relied, further reinforce my conclusion that appellees' conduct in this case infringed the first and fourteenth amendments.
 
 
 15
 The second ground for my dissent rests on the fourth amendment and derives from the Roaden decision, supra, 93 S.Ct. at 2801, which emphasizes the illegality of seizing 'all the books in a bookstore' without 'a constitutionally sufficient warrant . . ..' The majority concedes, as it must, that the 'quarantine' of the 19,000 magazines prior to the issuance of a warrant after an adversary hearing 'may be termed a 'seizure,' . . ..' My brothers, however, attempt to distinguish this case from Roaden-- in part, because of the 'ample grounds for assuming that the . . . publications were, indeed, contraband' since warrants had already issued for a limited number of copies. But probable cause is not the only prerequisite to a valid fourth amendment seizure. Additionally,
 
 
 16
 the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain.
 
 
 17
 Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). The original warrants authorizing the taking of six copies of 56 magazines did not call for seizing all copies of the offending publications. To the extent that the seizure exceeded the specimens allowed by the warrants, it had no warrant authorization at all.[1] In calling for 'a constitutionally sufficient warrant,' Roaden nowhere implied that courts were henceforth to distinguish between greater and lesser degrees of inadequacy based on a sliding scale of 'cause.' On the contrary, the Supreme Court held that warrantless seizures-- such as occurred in the present case-- were simply unconstitutional.
 
 
 18
 The majority also differentiates this set of facts from Roaden on the ground that there was no time to seek a warrant since the magazines might meanwhile 'have been destroyed, concealed, or transferred out of the jurisdiction.' (This observation, or course, does not apply to the six sample copies of each magazine, which the police could, and did, take under the original warrants for evidentiary purposes.) Roaden did suggest in dictum that exigent conditions might permit an occasional warrantless seizure. 93 S.Ct. at 2802. The Court, however, specifically stated that:
 
 
 19
 The facts surrounding the 'massive seizures' of books in Marcus and Quantity of Books . . . presented no such 'now or never' circumstances.
 
 
 20
 Id. Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), dealt with the seizure of thousands of magazines from a warehouse-- just the kind of situation involved in the sequestration here. It is therefore clear that the 'urgency' claimed on these facts cannot, any more than the existence of 'cause,' justify the warrantless seizure of the 19,000 publications, particularly since 'prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness.' Roaden, supra, 93 S.Ct. at 2801.
 
 
 21
 Accordingly, I would withdraw our prior opinion and affirm the order of the district court.
 
 
 
 [1]
 The police actually found only 55 of the magazines at the warehouse. G.I. Distributors v. Murphy, 469 F.2d at 753 n. 2
 
 
 [2]
 As to the 19,000 magazines, we have recently been advised by the parties that they were shipped back to the suppliers of G.I. Distributors after the district court held the police actions unconstitutional and ordered the magazines returned to G.I. Distributors. 336 F.Supp. 1036 (S.D.N.Y.1972)
 G.I. Distributors apparently offered no objection in the district court to the retention by the police or the District Attorney of the 330 magazines initially seized pursuant to search warrants. The 330 copies were to be used as evidence in a still pending New York state criminal prosecution of G.I. Distributors and two of its officers, Alvin Druss and Irving Herman. On May 4, 1973, however, Justice Harold Birns of the New York Supreme Court ordered this evidence suppressed. The government has not appealed from this order, apparently intending to rely on other evidence.
 
 
 [3]
 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651 (1971)
 
 
 [4]
 A search warrant for 24 of the magazines had been issued by Judge Tyler of the New York Criminal Court. A search warrant for the other 32 magazines had been issued by Judge McQuillian, another Criminal Court judge. Although approximately a year and a half later Justice Birns of the New York Supreme Court determined that these search warrants were constitutionally invalid, see fn. 2 supra, at the time of the seizure the police had no reason to doubt their validity
 
 
 [1]
 Indeed, the anomaly is that at the very time that the majority breathes life into the massive seizures here, by again overruling Judge Weinfeld's order, a state judge has already held illegal even the original seizures of sample copies of the magazines. See note 2 of the majority opinion