Hancock, Jr., J.
(dissenting). I concur without reservation in much of the articulate and persuasive opinion of Judge Simons. It must be understood that Judge Simons is writing for a unanimous court in his general comments concerning the circumstances when State courts, including our own, should rely on their respective Constitutions to accord "greater protection to individual liberties and rights than the protection guaranteed by the Federal Constitution” (majority opn, at p 302). Certainly, when it appears that some preexisting right which has been guaranteed under our common law or "the history and traditions of the State” (majority opn, at p 303) is no longer protected under the Federal Constitution we should not hesitate to rely on our State Constitution.
Thus, in a case involving a warrantless search (People v Johnson, 66 NY2d 398) we adhered to our established State constitutional standard based on the two-pronged veracity and basis of knowledge Aguilar-Spinelli test and declined to apply the less protective "totality of the circumstances” rule recently formulated by the Supreme Court in Illinois v Gates (462 US 213). And in People v Bigelow (66 NY2d 417, 426, *310 427), in holding that the exclusionary rule must be applied to evidence seized pursuant to a warrant issued on less than probable cause, we refused to apply the Supreme Court’s recently adopted "good faith exception” to the rule (United States v Leon, 468 US 897). Similarly, in People v Class (67 NY2d 431), a decision in which I concurred, we held that our State Constitution provided protection from an unreasonable police intrusion into the interior of an automobile where the Supreme Court had found no protection under the Federal Constitution (New York v Class, 475 US —, 106 S Ct 960). In each of these cases the differences between the applicable rules under the State and Federal Constitutions were sharply defined. Each case involved important and fundamental rights and presented considerations[1] which fully explained our decision to reject the new and less protective Federal rule and to adhere to our State Constitution in spite of the acknowledged desirability of promoting uniformity and consistency in the State and Federal rules pertaining to searches and seizures (see, e.g., People v Johnson, 66 NY2d 398, 406, 407, supra; People v Gonzalez, 62 NY2d 386, 389-390; People v Ponder, 54 NY2d 160, 165; People v Roman, 53 NY2d 39, 41-42).
Here, the majority’s decision to invalidate the search warrant[2] under the State Constitution proceeds on the premise that, as in Class, Bigelow, and Johnson, it is doing no more than preserving preexisting rights which have heretofore had protection under New York law but which are no longer protected under the Federal Constitution. It perceives the Supreme Court’s present ruling as a "dilution of the require *311 ments of judicial supervision in the warrant process and as a departure from prior law on the subject” (majority opn, at p 305; emphasis added). The Supreme Court, the majority concludes, has "extended the reach of this 'totality of the circumstances/fair probability’ standard [of Illinois v Gates (462 US 213, supra)] and applied it, for the first time, to an obscenity case to permit the magistrate to focus generally on the explicit nature of pornographic material without specifically considering the other statutory elements of the crime” (majority opn, at p 301). The standard that should be applied, the majority states, is what has long been established in New York as the "clear and definable standard of review” (majority opn, at p 307) — the rule as stated in People v Hanlon (36 NY2d 549). It should adhere to this established standard and eschew the newly adopted and less protective rule of the Supreme Court because, among other things, New York law requires the court "to determine the average New Yorker’s evaluation of, and reaction to, the challenged material” and such judicial determinations "involve^ a mix of factors peculiar to this State, including our legal traditions and our cultural and historical position as a leader in the educational, scientific and artistic life of our country, as well as a recognition that New York is a State where freedom of expression and experimentation has not only been tolerated, but encouraged” (majority opn, at p 309).
If I could accept the majority’s major premises — that the Supreme Court in its decision in this case has diluted "the requirements of judicial supervision in the warrant process” and departed "from prior law on the subject” (majority opn, at p 305) and that New York is merely adhering to the existing level of protection afforded in People v Hanlon (supra) — I would willingly concur in the result. In my opinion, however, the majority’s premises do not withstand analysis. On the contrary, as I read the opinion in the light of our earlier decision (People v P. J. Video, 65 NY2d 566) and other existing New York precedents, the majority has established a more stringent rule pertaining to what is required for a warrant to seize materials for use as evidence in an obscenity case — a rule which differs from what, until today, has been the law in this State and, I submit, remains the established Federal constitutional law notwithstanding the Supreme Court’s decision in New York v P. J. Video (475 US —, 106 S Ct 1610). Because the considerations which clearly called for reliance on our State Constitution to afford protection for the constitu *312 tional rights of the defendants in Class, Bigelow and Johnson are not present here, I must dissent.
I
It has never been suggested that the warrant issued here authorized a seizure of the type which constitutes prior restraint under the First Amendment[3] thus making it necessary to surmount the "higher hurdle in the evaluation of reasonableness” (Roaden v Kentucky, 413 US 496, 504) required by the Supreme Court decisions where a prior restraint is involved. Nevertheless, I think it is clear that we are adopting what amounts to the higher standard of evaluation (required for seizures involving prior restraints) although the warrant here was issued only for the seizure of specified videocassettes as evidence. To see whether this conclusion is correct it is necessary to discuss briefly our prior decision in this case and the basis for the Supreme Court’s reversal.
A) In our original decision we rejected the basis upon which Erie County Court had ordered suppression of the videocassettes as evidence — that Supreme Court Justice Easier, acting as magistrate, had not personally viewed the cassettes before issuing the warrant. We specifically held that there was no need for the issuing magistrate to "view the film or even a part of it before approving a warrant” (65 NY2d, at p 571). We affirmed the invalidation of the warrant on an entirely different ground. Citing the Supreme Court’s decisions in Roaden v Kentucky (413 US 496, supra); Marcus v Search Warrant (367 US 717, 730-731); Stanford v Texas (379 US 476, 481-485); *313 Maryland, v Macon (472 US 463, 465-470), we found the affidavits insufficient under the standard for review enunciated in those cases. In reversing our order in which we affirmed Erie County Court’s holding that the warrant was invalid, the Supreme Court described our reasoning as follows:
"The New York Court of Appeals likewise affirmed, although on a different theory than that of the Justice Court. According to the Court of Appeals, 'there is a higher standard for evaluation of a warrant application seeking to seize such things as books and films, as distinguished from one seeking to seize weapons or drugs, for example (Roaden v. Kentucky, [413 U.S. 496], 504 [93 S.Ct. 2796, 2801, 37 L.Ed.2d 757] [1973]; Marcus v. Search Warrant, 367 U.S. 717, 730-731 [81 S.Ct. 1708, 1715-16, 6 L.Ed.2d 1127] [1961]). In applying the [Fourth] Amendment to such items, the court must act with "scrupulous exactitude” (Stanford v. Texas, 379 U.S. 476, 481-485 [85 S.Ct. 506, 509-12, 13 L.Ed.2d 431] [1965]; see also, Maryland v. Macon, 472 U.S. —, 105 S.Ct. 2778, 86 L.Ed.2d 370 [1985]).’ 65 N.Y.2d, at 569-570, 493 N.Y.S.2d, 991, 483 N.E.2d, at 1123 (footnote omitted). Using this 'higher’ probable cause standard to review the affidavits submitted in support of the warrant application, the Court of Appeals stated:
" 'Many of the scenes described contain explicit sexual activity, patently offensive by any constitutional standard, but the allegations of the affidavits do not indicate whether they constitute all, most or a few of the scenes presented in the films * * * The descriptions of the action are not supplemented by references to the narrative or dialogue of the films and the affiant attempted to describe the "character” or "theme” of the movies by settings having nothing to do with the plot * * * He made no attempt to reveal the story line (or lack of one) of the films or demonstrate that their "predominant appeal” was to prurient interest. In short, none of the affidavits permit an inference that the scenes described are more than a catalog of offensive parts of the whole.’ Id., at 570-571, 493 N.Y.S.2d, at 992, 483 N.E.2d, at 1124.” (475 US, at p —, 106 S Ct, at p 1613.)
After pointing out that we had invalidated the warrant under "this [Roaden v Kentucky] 'higher’ probable cause standard” (106 S Ct, at p 1613), the Supreme Court reversed our determination on the ground that under the Federal Constitution that higher standard of review is not applicable for the issuance of a warrant not involving a prior restraint where *314 the materials are sought only to be used as evidence. In reversing, the Supreme Court stated:
“The New York Court of Appeals construed our prior decisions in this area [see, e.g., Roaden v Kentucky, supra, and Marcus v Search Warrant, supra] as standing for the additional proposition that an application for a warrant authorizing the seizure of books or films must be evaluated under a 'higher’ standard of probable cause than that used in other areas of Fourth Amendment law. But we have never held or said that such a 'higher’ standard is required by the First Amendment. In Heller, we said:
" '[SJeizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible * * *
" 'The necessity for a prior judicial determination of probable cause will protect against gross abuses * * *’ 413 U.S., at 492-493, 93 S.Ct., at 2795 (emphasis added; footnotes omitted).” (106 S Ct, at pp 1614-1615.)
The majority, in its opinion here, does not say specifically that it is now adopting, as a matter of New York constitutional law, the Roaden v Kentucky (supra) higher standard of review as the standard required for a warrant to seize a limited number of items solely for use as evidence in an obscenity case. Nevertheless, a fair reading of the opinion compels the conclusion that this higher standard is precisely the rule that is being adopted. Nowhere in the opinion does the majority say that this is not so.
B) Whether or not in its opinion the majority is purposefully adopting the higher Roaden v Kentucky (supra) “prior restraint” standard, one thing seems evident: in its holding that the affidavits are inadequate to support the warrant, the majority is applying the “prior restraint” standard or one very close to it — a standard which is considerably more stringent than what has heretofore been required. An analysis of *315 the majority holding and prior case law supports this conclusion.
The affidavits are insufficient, the majority says, under the established New York standard stated in People v Hanlon (36 NY2d 549, 559, supra) because, while "[m]any of the scenes described contain explicit sexual activity, patently offensive by any constitutional standard” (People v P. J. Video, 65 NY2d 566, 570-571, supra), the information provided "relates to [only] one of several necessary elements of the crime involved” (majority opn, at p 305). Put more specifically, the majority holds that although the affidavits undoubtedly show that the videos are "patently offensive”, they do not establish whether their predominant appeal is to "prurient sex” or whether they "lack serious literary, artistic, political and scientific value” (majority opn, at p 300). The significant question here is not whether Investigator Groblewski’s affidavits did, in fact, contain sufficient information so that Justice Easier could reasonably conclude that all three elements of the obscenity definition in Penal Law § 235.00 (1) had been satisfied.[4] The real question concerns the quantum and the degree of detail of the information pertaining to each of the three elements of the obscenity definition which the majority now requires and whether in its holding that Investigator Groblewski’s affidavits were inadequate on two of the elements the court is creating a new and more stringent New York rule.
Neither the defendants nor the majority cite a Federal decision, a New York decision, or one from another jurisdiction where a court has held a warrant invalid because the *316 warrant application, although sufficient to establish that the materials were patently offensive (Penal Law § 235.00 [1] [b]), nevertheless, lacked sufficient information so that the magistrate could determine whether the materials appealed to prurient interest in sex (Penal Law § 235.00 [1] [a]) and lacked serious literary, artistic, political and scientific value (Penal Law § 235.00 [1] [c]). Certainly, nothing in People v Potwora (48 NY2d 91) supports the proposition. In Potwora, the sole basis set forth in the affidavits for the issuing magistrate’s determination of probable cause was unsupported hearsay— the affiants’ statements that the described magazines had been found obscene by City Court Judges in Rochester and Buffalo. (Id., at p 93.) Nor does People v Rothenberg (20 NY2d 35) support the proposition. The warrant in Rothenberg was clearly illegal as a general warrant authorizing "a search on appellant’s premises for and a seizure of 'obscene, indecent and "hard core pornographic” pictures, photographs and motion picture films’ ”. (Id., at p 38.) Similarly, the warrant held invalid in People v Abronovitz (31 NY2d 160) was a general warrant which permitted the police "to search for and seize any material which depicted 'scenes of nude persons’ and which 'expose the female and male genital organs, the female and male pubic areas’ ” (id., at pp 162-163) and under which the police seized "over 1,000 magazines and calendars” (id., at p 163). On the other hand, a warrant application for obscene materials has been held valid on affidavits far less detailed and specific than the ones here (see, Monserrate v Upper Ct. St. Book Store, 49 NY2d 306, 309 [involving a warrant application which merely set forth the title of two magazines and a cursory description of an item to be seized; although the court invalidated the seizure of thousands of items not listed in the application, it held valid the seizure of the described items]).
The majority’s sole authority for the rule it imposes is People v Hanlon (36 NY2d 549, supra), the decision it characterizes as establishing "a clear and definable standard of review” (majority opn, at p 307). But there is nothing in Hanlon to support the holding that Supreme Court Justice Kasler did not have enough before him in the affidavits (although concededly sufficient for a finding that the videocassettes were "patently offensive”) to exercise his judgment and to come to what necessarily would be an opinion based on *317 individual perception and taste® with respect to the other statutory elements. Nor does Hanlon or, for that matter, the majority opinion explain what additional factual information Investigator Groblewski should have supplied, beyond the description of the sexual acts in the affidavits, which would, in some way, have assisted Justice Kasler in reaching his conclusions. Indeed, it is difficult to conceive of any possible additional content that Investigator Groblewski could have supplied which would not have amounted to a meaningless statement of his personal opinion that the films appealed to prurient sex and lacked literary or artistic value. The holding that the warrant application is fatally defective because of the insufficiency of Groblewski’s statements on these two elements of the obscenity definition seems directly contrary to the very thrust of the Hanlon opinion appearing in that portion which the majority does not set forth (majority opn, at p 306): "When considering whether probable cause exists no infallible formula is available; ideally we consider the probabilities as perceived by a reasonable, cautious and prudent police officer and evaluated by an independent Magistrate. However, in the real world, we are confronted with search warrant applications which are generally not composed by lawyers in the quiet of a law library but rather by law enforcement officers who are acting under stress and often within the context of a volatile situation. Consequently such search warrant applications should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences. (See, e.g., United States v Ventresca, supra; Brinegar v United States 338 US 160, 175.)” (36 NY2d, at p 559; emphasis added.)
Our court several years ago held that an adversary hearing on the issue of obscenity is not required before a warrant to seize materials for evidence may be issued (People v Heller, 29 NY2d 319). In Heller v New York (413 US 483),[5]
[6] the Supreme *318 Court affirmed this holding of our court and declined to hold that a prior viewing is required. (Id., at p 488.) Both the majority and the Supreme Court in this case now agree that a warrant may validly issue without a prior viewing by the magistrate. In adopting a rule which requires the affiant to supply more detailed and descriptive factual material than supplied here by Investigator Groblewski so as to satisfy the requirements of subdivisions (1) (a) and (1) (c) of Penal Law § 235.00 one wonders whether the practical effect will not be to require either a viewing or an obscenity determination before a warrant is issued although neither procedure is presently necessary.
II
An analysis of the Supreme Court’s opinion in this case and its opinion of Illinois v Gates (462 US 213, supra) simply does not support the proposition that the Supreme Court has diluted "the requirements of judicial supervision in the warrant process” (majority opn, at p 305) by adopting what it refers to as the "totality of the circumstances/fair probability” formulation of Illinois v Gates.
It is significant that, although the majority refers repeatedly to what seems to have become a "buzzword” — the phrase "totality of the circumstances” — that phrase never appears in the Supreme Court opinion (New York v P. J. Video, 475 US —, 106 S Ct 1610, supra). The reason for this, I believe, is obvious. As the majority itself notes (majority opn, at p 301) the Illinois v Gates decision applied to a totally dissimilar type of warrant application — one based on hearsay information supplied to the affiant by an informant. The holding in Illinois v Gates was simply that the rigid "two-pronged test” under Aguilar and Spinelli for determining whether an informant’s tip establishes probable cause for issuance of a warrant was abandoned and replaced by the more flexible "totality of the circumstances” test. The phrase "totality of the circumstances” as describing the method of judging the sufficiency of information supplied in a warrant application has meaning only in the context of an application based on hearsay infor *319 motion from an informant — and even then it has meaning only as an alternative to what was, before the decision in Illinois v Gates, the strict two-pronged "veracity” and "reliability” test of Aguilar and Spinelli.
Here, the application is on personal knowledge of Investigator Groblewski who saw the films himself. There is no informant. The question before us relates solely to the adequacy of Investigator Groblewski’s description of what he saw. "Totality of the circumstances” is meaningless in this context. Nothing in the Supreme Court’s reference to Illinois v Gates suggests that the court was applying anything other than its established rule for assessing the adequacy of an application for a warrant[7] to seize materials as evidence in an obscenity case where the seizure will not result in a "prior restraint” (see, Heller v New York, 413 US 483, supra).

Ill

My differences with my colleagues come to this. I believe that in holding that this warrant application is insufficient we are creating a new and more stringent standard under New York constitutional law for testing applications for a warrant to seize evidence in obscenity cases where prior restraint is not involved. I heartily agree that there are cases where we should, as the highest court in this State, apply our State Constitution to protect important and basic rights which are not afforded protection under the Federal Constitution. In my opinion, however, this is not such a case. Thus, with full respect for the contrary views of my colleagues, I am compelled to disagree.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander and Titone concur with Judge Simons; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion.
On reargument, following remand from the United States Supreme Court, order affirmed.

. In People v Johnson (66 NY2d 398, 407), for example, we based our decision to reject the "totality of the circumstances” rule of Illinois v Gates (462 US 213), in part, on the need for "predictability and precision in judicial review of search and seizures cases” and for providing " 'bright line’ guidance to police personnel in performing their duties.”

. The affidavits upon which the warrant was granted by the issuing magistrate (Supreme Court Justice Theodore S. Easier) are printed in full as an appendix to the Supreme Court opinion (475 US, at p —, 106 S Ct, at pp 1616-1619) and as an appendix to the dissenting opinion to our prior decision (65 NY2d, at pp 585-588). They are summarized at 106 S Ct, at page 1616 and at 65 NY2d, at page 580. These affidavits describe the contents of what were advertised by defendants as "adult cassette movies” (entitled "Taboo II”, "California Valley Girls”, "All American Girls”, "Taboo”, "Debbie Does Dallas”). Each affidavit describes consensual acts of deviant sexual intercourse (106 S Ct, at p 1616). It is conceded that "[m]any of the scenes described [in the affidavits] contain explicit sexual activity, patently offensive by any constitutional standard” (People v P. J. Video, 65 NY2d 566, 570, 571).

. The warrant was issued solely for the purpose of seizing one or two copies of specifically identified videocassettes for use as evidence in the criminal prosecution. Had defendants shown that other copies of these videocassettes were not available, the court would have had the videos copied and immediately returned to defendants pursuant to Heller v New York (413 US 483, 492-493). In all, 13 cassettes were seized. This was not a large scale seizure of presumptively protected materials (compare, e.g., Marcus v Search Warrant, 367 US 717, involving a warrant authorizing a seizure of materials which in the opinion of police officers were obscene and under which 11,000 copies of 280 publications books and pictures were seized) or the seizure of a film from a movie theater resulting in an abrupt halt of the public’s right to see the movie (compare, e.g., Roaden v Kentucky, 413 US 496, 504) or a general warrant authorizing a wholesale seizure (compare, e.g., Stanford v Texas, 379 US 476, 477, involving a warrant authorizing the seizure of unspecified "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments” under which 2,000 items were seized).

. It would serve no purpose to debate anew (see, People v P. J. Video, 65 NY2d 566, 570-571, 580-584) whether the affidavits are sufficiently complete and detailed so that Supreme Court Justice Kasler acting as a neutral and detached magistrate could conclude that the videocassettes were not only patently offensive but also appealed to prurient sex and lacked serious literary or artistic value. Suffice to say that on this question the Supreme Court has stated: "Respondents concede that the affidavits describing the five films adequately established probable cause with respect to the second of the three elements of obscenity under the statute, namely, that the movies depicted 'in a patently offensive manner’ the various kinds of sexual conduct specified in the statute. See N.Y. Penal Law § 235.00 (1) (b) (McKinney 1980). Our review of the affidavits convinces us that the issuing justice also was given more than enough information to conclude that there was a 'fair probability’ that the movies satisfied the first and third elements of the statutory definition, namely, that the 'predominant appeal [of the movies] is to the prurient interest in sex,’ and that the movies 'lac[k] serious literary, artistic, political, and scientific value.’ See N.Y. Penal Law §§ 235.00 (1) (a), (c) (McKinney 1980).” (475 US, at p —, 106 S Ct, at p 1616.)

. The oft-quoted statement of Justice Stewart pertaining to the difficulty in defining pornography in his concurring opinion in Jacobellis v Ohio (378 US 184) seems apt here: "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it”. (Id., at p 197.)

. Under Heller v New York (413 US 483, 490-491) defendants had an absolute right to demand "a prompt judicial determination of the obscenity issue in an adversary proceeding”. It is significant that they did not do so. *318 Neither did they challenge the accuracy of Investigator Groblewski’s descriptions of the videocassettes or his sworn statements that "content and character” of each of the videocassettes was as set forth in the description of the various sexual acts which followed. Had defendants chosen to challenge Investigator Groblewski’s statements, they could have availed themselves of the hearing procedure for doing so (see, Franks v Delaware, 438 US 154). They did not.

. That the Supreme Court’s reference in its opinion here to Illinois v Gates (462 US 213) was not for any purpose pertaining to the so-called "totality of the circumstances” rule but merely for the purpose of restating the established general rule for probable cause appears clearly from the following: "We believe that the analysis and conclusion expressed by the dissenting judge are completely consistent with our statement in Gates that 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.’ 462 U.S., at 244, n. 13, 103 S.Ct., at 2335, n. 13.” (475 US, at p —, 106 S Ct, at p 1616.)